Josephine D. ASHWORTH, Rulin C. Ashworth, R. Clyde Ashworth, Jr., and R. Glen Ashworth, individually and doing business as partners under the name of Ashworth Transfer, and Ashworth Transfer, Inc., a corporation, Plaintiffs,

v.

WELLS CARGO, INC., a corporation, Defendant and Third-Party Plaintiff,

v.

UNITED STATES of America, Third-Party Defendant.

Josephine D. ASHWORTH, Rulin C. Ashworth, R. Clyde Ashworth, Jr., and R. Glen Ashworth, individually and doing business as partners under the name of Ashworth Transfer, and Ashworth Transfer, Inc., a corporation, Plaintiffs,

v.

UNITED STATES of America, Defendants.

Civ. Nos. 36330, 38467.

United States District Court
N. D. California, S. D.
Jan. 6, 1961.

Derby, Cook, Quinby & Tweedt, San Francisco, Cal., for plaintiffs.

D. Ralph Cesari, San Francisco, Cal., for defendant and third-party plaintiff.

Laurence E. Dayton, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for defendant United States.

ROCHE, District Judge.

These two actions were tried and submitted together. Jointly, they present the question of liability among the parties involved for damages suffered by plaintiff.

Ashworth and Wells Cargo, both common carriers doing business by motor truck in interstate commerce, contracted with shipper United States to transport a load of rockets from the Sierra Ordnance Depot at Herlong, California to Yuma City, Arizona. Three trucks—each consisting of a tractor operated by employees of Wells Cargo and a trailer owned by Ashworth—were loaded by United States Air Force personnel at Herlong with substantially identical cargos, each consisting of ten pallets of rockets weighing a total of 31,000 pounds. The pallets—uniform in size and weight—were loaded front to rear down the center of each trailer, with the last two pallets in line fastened together and some shoring between the last pallet and the doors of the trailer. Open spaces approximately 18 inches wide remained between the row of pallets and the side walls of the trailer. The trailers were closed and sealed before the trucks left Herlong on April 5, 1954.

The truck in question here, which later overturned, was driven from Herlong by Roy S. Brown; he signed the bill of lading as Wells Cargo's agent and also sign-

ed a check list approving of the manner in which the cargo had been loaded.

The three trucks proceeded to Reno, Nevada, where the trailers were turned over to Ashworth's employees to complete the haul, and then on to Salt Lake City, Utah. There, Frank Watkins and James B. Leach joined the convoy as driver and relief driver, respectively, of the third truck. They departed from Salt Lake City at 2:30 P.M., April 6, and arrived in Las Vegas, Nevada, at 6:30 A.M. the next day, at which time Leach, who had been relieved by Watkins at 10:30 P.M. the night before, resumed driving. At 10:00 A.M., while proceeding toward Yuma on highway 95, about 12 miles north of Needles, California, the truck driven by Leach overturned on its left side in the course of attempting to negotiate a curve to the right.

There is no dispute as to damages. Shipper United States suffered cargo damage totaling $7,211, which amount was deducted from charges owed to Ashworth for services on other hauls. 49 U.S.C.A. § 20(11). In addition, Ashworth spent $6,616.43 for repairs, salvage and miscellaneous expenses.

It is a matter of controversy whether or not there was negligence in loading the cargo and, if so, who is liable under the law for damages caused as a consequence thereof—the United States or Wells Cargo. However, it is unnecessary to decide these issues here for it is the opinion of the court that the sole cause of the damages suffered was the negligent driving of plaintiff's employee, James B. Leach.

Unfortunately, Leach himself did not appear at trial, but his deposition is nonetheless revealing. When asked to describe the stretch of road where the accident occurred, he testified:

"Oh, it was in rolling country, and it was extremely curvy highway. The highway at that particular point for several miles was continually curving. And it wasn't exactly switch-backs, but they were extremely sharp curves. A short space, and then another extreme curve, and then another short space, and then another curve. And it was up and down over sand dunes. They was—the visibility was very poor. Not in relation to the weather, but I mean in relation to the obstacles around the highway surrounding."

He described the approach to the fatal turn as upgrade, a condition which undoubtedly further hindered his ability to see what lay ahead. His description of the scene was verified by photographs offered in evidence. Although a driver of some ten years experience, Leach conceded never having been over this stretch of highway before, although he had been warned to expect sharp curves. That he himself was surprised by the sharpness of this curve after entering it—and therefore must have been unable to observe it beforehand—is admitted in his deposition. From the foregoing, the conclusion is inescapable that the poor visibility, his unfamiliarity with the road, and the warning he had received of its dangers as well as his own observations of its "curvy" and "rolling" nature, required that Leach drive into this turn exercising a high degree of caution and care.

Leach described his speed entering the turn as 35 m. p. h. The tachometer reading indicates a speed between 35 and 45 m. p. h. Attempting to take the curve at a speed between 35 and 45 m. p. h. was not commensurate with the caution and care required under the circumstances and therefore, constituted negligence.

This negligence was the sole cause of the accident. The court is persuaded that no other factor was materially to blame by the undisputed fact that this truck had traveled steadily for two days and over 1,000 miles—loaded exactly as it was when it left Herlong—without untoward incident or even any observation of listing. There is no evidence to indicate that the cargo had shifted at all during this time, even though, as Watkins testified in his deposition, curves as sharp as the one in question had been encountered on four or five occasions be-

fore the accident. Furthermore, the first two trucks in the convoy—loaded identically—made the turn successfully. Plaintiff has not carried the burden of proving that any defects which may have existed in the shoring of the cargo actually contributed to the accident.

It is the conclusion of the court that plaintiff is not entitled to recover from defendant Wells Cargo or defendant United States in either action, and that judgment should be rendered in favor of defendants and against plaintiff.

Defendants will submit Findings of Fact and Conclusions of Law in accordance with the foregoing.